first case to be heard is 19-3272, which is SEC v. Alpine Securities Corporation. Ms. Fritz? Yes, thank you very much, Your Honor, and good afternoon, Your Honor. I want to begin by expressing on behalf of Alpine our thanks, first of all, for the expedited treatment that this Court agreed to provide to this appeal, and secondly, just for the fact that the Court has remained willing, under all the circumstances, to continue to hear arguments. This case, described by the SEC as a case of first impression, presents to the Court the threshold and crucial issue of the SEC's lack of authority to pursue enforcement actions and civil penalties for violation of the SAR provisions of the BFA. That's where this case should have begun, that's where this case should have ended, and I will be focusing on that point, but before I do, I want to emphasize that we have also demonstrated a series of other errors, each of which constitutes a separate basis for reversal of the judgment below. Number one, the Commission completely ignored and violated the APA and the Federal Register Act provisions through an impermissible approach of supposedly incorporating into Rule 17A8 the entire BFA, or at least part of it, and creating what the District Court described as a regulation that could evolve over time. Second, through a flawed, accelerated summary judgment process, the District Court acceded to the SEC's newly-minted red flag theory with respect to what constitutes a violation of the BFA, using disparate bits of industry guidance to fashion mechanical, inflexible rules that do not and should not exist and that are demonstrably inconsistent with pronouncements of the agency that does have authority to administer the BFA since then. In the process, the Court engaged in in relation to agency statements that were plainly not worthy of deference under the decision in Kaiser. Third, the Court then went on to hold that those hard and fast rules that it had created were so hard and fast that all of the facts and circumstances regarding the firm's business, its practices, its interpretation and application of the BFA, all of it was irrelevant. Summary judgment was granted by the District Court based on literally a check-the-box process. The SEC established nothing other than that a supposed red flag was referenced in the firm's SAR support file. That red flag, according to the District Court, then creates the SAR filing requirement, but also creates a requirement that that red flag be included in the SAR narrative. Neither of those rules existed prior to this District Court decision. Finally, the Court concluded that the SEC could at the same time slice and dice the BFA to enforce the SAR filing rules while at the same time ignoring the SAR provisions regarding intent and regarding penalties, enabling the SEC to rely on lower standards of strict liability and obtain harsher penalties than would be available under the BFA. Now, with respect to the first argument, the Congressional delegation under the BFA to Treasury and the reasons for it are abundantly clear. Congress enacted a statute to address money financing, focused on the compilation, the creation of a database derived from information across financial sectors, and it delegated administration and enforcement of those provisions to Treasury. Treasury, through FinCEN, then promulgated rules which created a structure plainly separating enforcement authority from examination authority. FinCEN retained exclusive authority to administer, interpret, and enforce the BFA while various regulators, including the SEC, received only the very limited authority to conduct examinations with respect to compliance with the BFA. Now, those delegations are clear from a whole series, lengthy series, of FinCEN statements and issuances that are all part of the briefing. But by way of example, in 1987, in Department of Treasury amendments, FinCEN actually went back to deliberately clarify its authority, emphasizing that it was delegating only examination authority to regulators and stating, finally, the department's exclusive authority to impose civil penalties under the BFA will be specifically stated. In addition, FinCEN, at the time of the passage of the SAR rule applicable to broker-dealers, emphasized that the rule was part of the counter-money laundering program of the Department of Treasury and stated that the SEC had adopted Rule 17A8 to enable the SROs to examine for BFA compliance. Those are just two examples of what is a clear, cogent, administrative structure that was created under the BFA, with examination authority being exercised by various regulators, but for the sake of uniformity and consistency, and consistent with the congressional delegation, the enforcement authority was retained by Treasury. Now, in our papers that we have submitted, we have gone through additional statements that make this abundantly clear. In the briefing at 30 to 33, we also have an extensive Rule 56.1 Statement of Material Facts in the appendix, beginning at 352, but perhaps more importantly, we have also included the declaration of Beverly Lowe, a FinCEN employee, former FinCEN employee, who served as an expert to Alpine. That declaration, that report, appears at the appendix at 607, and it includes a detailed and comprehensive discussion, not only of her own internal experience at FinCEN, at the precise time when these issues were being considered, it also goes through in detail all of the various aspects of the legislation that confirm without question that the enforcement authority was delegated to and was retained by FinCEN. I had obviously wanted to talk about also some of the case law that applies to this. For example, the Brown and Williamson case. But at this point, I would ask, are there any questions? Okay. Fine. Thank you very much. Judge Walker? Yes. Doesn't your entire argument depend upon your claim that the SEC is enforcing the BSA and doing essentially the work of FinCEN? The SEC certainly takes the position that it is not enforcing the BSA, and we think that, yes, it's doing exactly that. The SEC makes the argument. Okay. But the SEC is taking the position that Rule 17A8 of the Federal Security and Exchange Act rules is what they are enforcing, and that Rule 17A8 has basically announced that under 17A8, that the future developments under Title 31 are continued to be enforceable under 17A8 in the future. The first rules had to do with the actual amounts that would be determined to be improper under the Bank Secrecy Act, if not disclosed, et cetera. But then when they got into the later SARS question, then that was a modification of the rules that was encompassed and was contemplated under Rule 17A8. Isn't that correct? That is their position, and I would really make three points in response. Okay. First, with respect to 17A, first of all, 17A is not so broad that it would encompass the entire incorporation of the BSA. It's actually narrower than that, but more important, 17A here was not even followed. Section 17 provides that rules can be established, that the Commission shall make or BD shall make and keep and disseminate such reports as the Commission by rule prescribes in furtherance of this title. There is no aspect of Section 17 that was complied with in this process that the SEC sought to employ. First of all, based on the fact that they simply tried to incorporate a separate statutory scheme, they violated a number of provisions of the Federal Register Act that we have referenced. Incorporation by reference of a future provision is prohibited by the Federal Register Act, so they have violated provisions that specifically say that you cannot circumvent the APA by simply, as stated in Bayou Lawn, trying to avoid the troublesome requirements of the APA by supposedly giving yourself an exemption. They have violated other provisions. Let me just stop you there. I guess you're saying that the SEC should have put out the actual rules that are specified in the Bank Secrecy Act for notice and comment by the SEC. Is that what you're saying? Therefore, they wouldn't have violated, in your view, the APA. My question is, why should they have to do that? The FinCEN had certainly made clear that these rules were going to be in place and the public was given notice and given an opportunity to comment on that. What's more, at the time they did that, in their notice, when the SEC promulgated 17A, they also made very clear that they would be enforcing the broker-dealer aspects of it, as I recall, and as would other agencies. There didn't seem to be any deception of the public here of what was happening. There was notice and comment by FinCEN. It seems to me one of your arguments seems to be that maybe the SEC should have put out notice and comment, which would have been wholly duplicated. People knew when those were issued that the SEC would be under 17A8 enforcing those rules. It's really a technical argument that you're making. First of all, I would just emphasize it's not a technical argument because this is not, under the cases that we've talked about, this is not an enforcement of the Exchange Act. This is clearly an enforcement of the BSA. There are any number of cases where this kind of attempt to circumvent what is clearly going on has been considered by the courts. In cases like Palm Wonderful, for example, which is relied on by the SEC, there is a whole discussion of the fact that a Lanham Act case can go forward precisely because it is not an attempt to enforce the FECA. In cases like Palm Wonderful, in cases like Ameren, in cases like, for example, the Republican Committee versus the SEC, the courts have again and again said that it is not permissible for an agency to simply take and seek to enforce a statutory scheme that is the province of a different agency. That is terribly important for all the reasons that you see in this exact case. Here, if I could say, but here, both agencies were working in concert. There was no opposition. We are not having competing agencies here. They are always working together. When it came to enforcing the BSA rules under the SEC's aegis, that was fully understood. In fact, the SEC was invited by the Treasury Department to come in and assist with the development of the rules as far as broker-dealers were concerned. It was completely understood by everybody in the public, because it was out there as public notice, that it would be the SEC that would be enforcing these rules consistent with its mission to ensure the integrity of the securities markets. It does not seem to me that anybody was surprised or deceived or betrayed or anything. There is no dispute between Treasury and the SEC on this, in this case. I would emphasize first that the notion of consultation that Your Honor just referred to is another concept that has been used in any number of cases in which one agency has tried to invade the province of another. For example, in Bayou Lawn, that was the exact argument that was consulting, since the legislation provided that it would consult with the agency that actually possessed the authority to administer and enforce, that it therefore could proceed with its own actions. The court specifically said the argument was, in the court's words, absurd. DOL, according to the court, cannot bootstrap its consulting role into a co-equal one. The exact same argument was made in the California version. That presumes, that argument presumes that the SEC just simply announced independently that it was going to be enforcing the Bank Secrecy Act. No. It made very clear that the rules passed under the Bank Secrecy Act or promulgated under the Bank Secrecy Act would be part of the rules that the SEC would enforce under its own rules, the SEC's own rules. There was never any confusion or misunderstanding about that fact. In fact, the Treasury Department wanted to have the SEC do this because, truth be known, FinCEN is one small little agency in the Treasury Department that tabulates and collects information for all sorts of other law enforcement agencies to use. They don't have a regional headquarters around the country. They don't pursue cases the way the SEC does in the broker-dealer area. They're basically there to service other agencies who want to do examinations. And if another agency wants to enforce under its rules, the rules as promulgated by the Bank Secrecy Act, what's the problem? What we have here, yes, FinCEN has certainly emphasized, and again, its statements are legion and consistent in terms of the fact that it was retaining enforcement authority. Why was it doing that? It was doing that because that is the way to avoid exactly what happens in this case, where suddenly, and let's just stop and think about what we have here. We have the SEC walking into a courtroom, not the agency charged with administration and enforcement and interpretation, walking into a courtroom and espousing completely new and different interpretation and enforcement regimes with respect to the statute that is the responsibility of FinCEN. And we have cases that make abundantly clear that that is a usurpation of another agency's authority precisely because that administration and enforcement function is so critical, so critical for uniformity of interpretation. And in this case, FinCEN has... Your argument doesn't work because the rules under the BSA that we're talking about here, the SARS, are applied to banks, are applied to businesses, and are applied to broker-dealers. And with regard to broker-dealers, all of the circumstances, the SEC has the expertise, and the circumstances that would apply to broker-dealers might be very different, and the kinds of reports that might be required would be very different than the reports that would be required by treasury banks, by the controller of the currency, by others under the aegis of the Treasury Department. And so it makes all sorts of sense for the SEC to be enforcing the rules under its own rules, enforcing the Bank Secrecy Act provisions for suspicious activity reports, and develop forms that are consistent with what the SEC believes broker-dealers do, because they're the ones with the expertise. But the problem here is that this case, and the SEC's new theories that it has found, are supposed interpretations of the basic STAR rules. And supposedly, in this case, a new theory of enforcement and prosecution has now been created that crosses across all of the financial sectors regardless, since they are interpreting not the STAR, not just those rules as applied to BDs, but those rules that apply in substance across the board. It is FinCEN that should have the ability to interpret that which is before it. And that is in addition to the fact, one other point, FinCEN has certainly spoken about the fact that it wanted to leverage the resources of other regulators, not just the SEC, by the way, but in its various statements, it has referenced the fact that this enforcement regime is structured so that it can leverage the resources for examination purposes only of other regulators, while it retains the enforcement authority. In fact, the rules on their faith differentiate that examination authority. So looking at the plain rule, you can't get to the idea that the SEC is in any way authorized to enforce those rules. Can you cite me any document, any case, any situation, any public statement even by Treasury or by FinCEN objecting to what the SEC has done under Rule 17A? It's not a matter of objecting to it. What they have done... But you're saying that somehow they've been damaged or injured or something. I mean, you're sort of presenting this action as kind of a third party trying to uphold the rights of FinCEN. It's not a matter of upholding the rights. What we've relied on is a very clear line of authority from Brown and Williamson all the way through to this court's decision in nutritional health, a clear line of authority that lays out on the one hand what the framework is, what the proper analysis is, where you have one agency asserting jurisdiction with respect to another statute. It was this court in nutritional health that laid out the rule that applies in this case, that where the later enacted more specific comprehensive statute that targets the specific subject matter at issue in this case is the authority to administer and enforce that statute to one agency, recognizing another agency's assertion of concurrent jurisdiction under a general statute, exactly what's happening here, brings a discordant tone with the regulatory structure created by Congress. At the same time, under the exact same circumstances, we have a series of cases even cited by the SEC in which the courts have held, Tom Wonderful being one of them, that one agency cannot simply come in to administer, interpret, and enforce a statute which is the province of a different agency. That case law is clear, the delegation is clear, and FinCEN has consistently said with respect to the SEC, like so many of the other regulators that are involved, that its role is limited to examination. In fact, under 10.10.8.1.10, the SEC and the other federal regulators are specifically directed to examine and then to report to FinCEN. And the regulation states FinCEN will then make the decision regarding enforcement and retain exclusively to FinCEN the ability to impose civil money penalty. All right, Ms. Fitt, if I can just interject, this has been very helpful. If Judge Walker has no further questions, I'll ask Judge Sack if he has any. No, thank you. Judge, there was one aspect of Judge Walker's comment that I didn't respond to. Can I briefly respond to that? You're going to have a two-minute rebuttal. I've given you extra time, admittedly, but this will give you time to mull over Judge Walker's questions. Thank you, Your Honor, and may it please the Court, Daniel Staroselsky for the Securities and Exchange Commission. I would like to make two preliminary points about the Commission's role in this space and then turn to the arguments we've heard today. First, the reason we're here today is because registration and reporting requirements are for brokers and dealers. In exercising that responsibility, it is not at all uncommon for the Commission to look to other laws and regulations that bear on a broker's fitness and integrity. For example, to operate in this industry, a broker-dealer has to disclose whether it has tax liens or judgments against it or has had a criminal record. It's similarly appropriate for the Commission to require brokers as the gatekeepers to the securities markets to maintain records about suspicious transactions that occur by, at, or through their firms. Second, I think Judge Walker's comments alluded to this. The features of the rule that Alpine Securities Corporation objects to, in fact, support our position because what they show is that the regulatory burdens. We recognize that FinCEN has overlapping and important interests in the space and we did not establish a competing regime. And so however this case comes out, broker-dealers will have to report suspicious transactions because those reporting requirements were imposed in a mandatory rule that Congress directed as part of the Patriot Act. And so what our rule does is allow us to leverage FinCEN's requirements without subjecting broker-dealers to duplicative and potentially conflicting obligations. And with that, I'm happy to answer any questions that the Court may have or I could start walking through how we see the case. I don't have any questions. I don't have any questions as far as that generally goes. I have one question. If this is the time. Yes, my only question would be, would there be an opportunity, I think you should respond to the arguments by the other side. Yes, of course, Your Honor. And if the Court would like me to start in a particular place, I'd be happy to. I mean, I guess I will start with the cases that they cite on agency overreach. And the dispositive difference with every single case that they're talking about is, as I just said, we are not adding any regulatory burden. Regardless of how this case comes out, broker-dealers will be subject to the Treasury and FinCEN rule because Congress mandated it. And nutritional health is obviously an important case because it's from this Court. And what you'll see is that the FDA's authority in that case under its organic statute and the specificity of the conflicting regime were very different. And just as a preliminary note, I think nutritional health and the other cases get the framework exactly right, which is my friend on the other side wants to start with the BSA. But it's important to look at our organic statute because that's where our authority comes from. And in nutritional health, that was a problem for the FDA because they issued a rule governing the packaging of drug and dietary supplements in an effort to prevent iron poisoning in those products. But they relied on a provision authorizing regulation, not of packaging, but of the addition of adulterated products, meaning those that were corrupted through the addition of some ingredient that's not part of the substance. And the Court said, no, no, no, that's not packaging. Packaging isn't what causes the poisoning here. And then the second part of the opinion is there was far greater specificity of the conflicting scheme because Congress delegated to the Consumer Product Safety Commission the authority to regulate packaging. And what the FDA was doing was, quote, the FDA was regulating the packaging of those products, not the packaging of those products. And that's why we have this existing requirement. And again, our rule is designed to maintain just one regime, not to supplement FinCEN's enforcement. Okay, that's fine. Judge Sack, do you have any questions? Yeah, I just would ask you to tell them to distinguish. There's a DC Circuit, Judge Tatel, I guess, 2011 case. I think it's FERC. I think I better spell that F-E-R-C. Yes, Your Honor. For forestry service, I think. Would you distinguish that, or assuming it's to be distinguishable, distinguish that case from the case at that bar here? I would be happy to, Your Honor. In that case, the City of Idaho Falls case is, in fact, very good for our position because what Judge Tatel talked about was the touchstone of the APA is the values of public participation, fairness, and informed agency decision-making. And we tick the box on each of those requirements. In Idaho Falls, what happened is FERC used a regulation set by the Forest Service, which doesn't have any authority over FERC-regulated entities, to set rates that energy plants had to pay for occupying federal land. And the DC Circuit actually said that was fine. And it was also fine that these rates were updated to keep up with inflation. But the problem is Forest Service later changed its methodology to that FERC had previously rejected. And the result was that FERC rates went up substantially, but the regulated public had no opportunity to comment on that. Or, you know, it would have been unreasonable for FERC-regulated entities to try to keep up with everything that Forest Service puts out in the Federal Register. And here, again, the dispositive difference is that the suspicious activity requirement for broker-dealers comes from Congress. They gave Treasury express authority to set forth these requirements. And the APA values are satisfied because the broker-dealer community knew where to comment to the extent that they had concerns about the obligations. And if you look at the adopting release for the suspicious activity reporting regulations, you'll see that there were, in fact, comments. Treasury tailored the rule. At the time, there was an enormous outreach from... So the comments were to Treasury, but not to the SEC? Well, that's correct, Your Honor. The comments went to Treasury. The rulemaking was in consultation with the SEC. But the point is, they had an opportunity to comment on every single aspect of the rule that they're subject to. Didn't the notice of the proposed rulemaking on the SARs indicate that the SEC would be enforcing? Yes, that's how we read it. Would be enforcing under 17A8? Yes, I mean, it said... That's correct, Your Honor. That's very clear in the notice of proposed rulemaking that Treasury put out. That's correct, Your Honor. Okay. And importantly, I think, you know, there was discussion earlier about all of the coordination between FinCEN and all the public statements or indications from them that support our activity. In this case, I will point out as well two other considerations. Number one is that specifically in this case, we advised them that we were filing this action. And there's been discussion about, well, did they know about, you know, what particular violations we were charging? And I would point the court to the very first page of the report from our Office of Compliance Inspections and Examinations, which is discussed in the briefing. And that's at Appendix 581. And that lays out many, many of the things that we're talking about here. And on the first page, you'll see that a copy of it was sent to FinCEN. The second point that I would make is that FinCEN's awareness of what's going on is obviously important, but fundamentally it's Congress that decides. And Congress is aware and it monitors the activity in this space. The most recent GAO report that I'm aware of is Report 19-582. That's from past August. And what you'll see is Congress has held hearings on this matter. It's fully aware of how the regulators are machining and upholding the rulings. So, ah, at least to be note with assets. Okay. The court has one minute left. Thank you. If the court has any further questions? Judge Walker? No. Judge Sacks? No, thank you. I think we're fine. Ms. Fritz has reserved two minutes. In, ah, I'd like to start with one of the more, one of the remarks that I just heard from Judge Walker, and that is a statement that in the adopt, in sentence adopting release, that it somehow indicated or suggested that it knew that the FEC would be enforcing the red. That is an error that certainly appears in Judge Coates' decision, but it is error. The actual statement that's made by FinCEN in that adopting release makes very clear that it is, that the FEC is obtaining examination authority only. And there's, it's very, it's frustrating here because the FinCEN has spent so much time differentiating the two, making it clear that it is delegating only its examination authority. And that's contained within the very adopt. Again, you're making the same point you've made all along, that because FinCEN says we're going to enforce, that somehow the SEC under its rules cannot enforce. And nowhere, nowhere has FinCEN taken that position, that they, that, that, that somehow the enforcement authority of the Treasury is, is under the Bank Secrecy Act, is, can be exclusively enforced. But if the SEC says, well, we would like, we want these, we think these same rules are appropriate for the SEC, we're not going to publish them separately. We're not going to have notice and comment because that's already been done by the Treasury Department. But we are going to enforce them in consistent with our mission under the Securities and Exchange Act, Rule 17. And under Rule 17a, we're permitted to do that. And so that's, and that, that, that there's nothing retroactive. They, they announced that they were going to be enforcing the, the iterations of, as of the Bank Secrecy Act, as they came out, as, as, as Treasury enforcement mechanisms, excuse me, as SEC enforcement rules, you know. Respectfully, Your Honor, they have said that they have exclusive enforcement authority, as I mentioned earlier, and as cited in the- So the SEC has exclusive enforcement authority under 17a8. So where, where does that leave you? I just want to be clear. FinCEN has made very clear that its position is, and I don't want there to be any question about this, FinCEN's position is that it has exclusive authority. Now, that then brings us to what is the appropriate analysis. And Your Honor has basically looked to whether there is any prohibition. And certainly that's an argument that the SEC has made. Is there, they would argue, joint or concurrent authority? Is it prohibited? Now, the cases lay out exactly what the analysis is that applies under these circumstances. The SEC has cited cases that are basically implied repeal or preclusion cases. Those are Palm and Jim. Those cases do not apply to this circumstance. This is not an issue with respect to preclusion or implied repeal. This particular case is governed by the analysis that goes back to Brown and Williamson, but continues right through nutritional health. As the court analyzed in NLRB, it said specifically, is our job here is the analysis to decide whether Congress withheld the authority for another agency, or did they intend that another agency could exercise that authority? And the analysis- Thank you, Ms. That's all very helpful. I think we've exhausted our time, but we appreciate your argument and that of opposing counsel very much. And we'll- Yes? If there's just one more point I can make, just to respond to the court's earlier question. The court asked with respect to the APA, whether there was any obligation under the APA to go to notice and comment with respect to the new SAR rules, Rule 17AA was applied with the notice and comment procedure with respect to those old CTR rules. And the cases make clear in Idaho Fall, which was just cited by Judge Sack, and in Cochoto, that this alteration, modification of the rule could only be accomplished through the same notice and comment procedure that was the basis for the original rule. In addition, those cases also discuss the fact that where all that the SEC is doing is feeding over to a different agency construction of the rules that would be applied, that is an unlawful delegation of its authority. Those are only two- That's fine. I think we understand that. I think we understand the thrust of your argument. All right. And we thank you very much. All right. And we'll reserve decision.